**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LINDA PEREZ LUGO, in representation of her minor daughter MRP<br><br>    Plaintiff<br><br>            vs.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, INC. or alternatively, JOHN DOE CORPORATION d/b/a HOSPITAL EPISCOPAL SAN LUCAS, PONCE; DR. MIGUEL A. VEGA GILORMINI and his wife JANE DOE, each of them personally and in representation of their conjugal partnership; DR. FELIX HERNANDEZ RODRIGUEZ and his wife JANE ROE, each of them personally and in representation of their conjugal partnership; GINECOLOGOS DEL SUR, C.S.P; JOHN DOES 1, 2 and 3; CORPORATIONS A, B and C; UNKNOWN INSURANCE COMPANIES A through H<br><br>    Defendants | CIVIL NO.: 17-<br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW plaintiff MRP, a minor whose interests are represented in this proceeding by her mother, Linda Perez Lugo, through his undersigned counsel, and very respectfully states and prays as follows:

**Jurisdiction, Venue and Parties**

1.      The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.      Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum

of $75,000.

4.     Linda Perez Lugo ("Mrs. Perez"), is a citizen and resident of the State of New York, and appears herein in the best interest and as parent and legal representative of her minor daughter, plaintiff MRP, also a New York citizen and resident.

5.     Defendant Hospital Episcopal San Lucas, Inc. or alternatively, John Doe Corporation d/b/a Hospital Episcopal San Lucas (Ponce), (hereinafter "San Lucas") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico which has its principal place of business in Puerto Rico. San Lucas is the owner and/or operator of a hospital of the same name, located in Ponce, Puerto Rico.

6.     Defendant Doctor Miguel A. Vega Gilormini ("Dr. Vega") is a medical doctor, specializing in obstetrics and gynecology, married to codefendant Jane Doe and together with her constituting a conjugal partnership, who provided medical treatment to Mrs. Perez Lugo and her minor daughter MRP. Dr. Vega and his wife are domiciled in Puerto Rico, where they reside. At all times relevant to this claim Dr. Vega was employed at and/or was a staff physician of San Lucas and/or an employee, agent or owner of Ginecologos del Sur, C.S.P.

7.     Defendant Doctor Felix Hernandez Rodriguez ("Dr. Hernandez") is a medical doctor, specializing in obstetrics and gynecology, married to codefendant Jane Roe and together with her constituting a conjugal partnership, who provided medical treatment to Mrs. Perez Lugo and her minor daughter MRP. Dr. Hernandez and his wife are domiciled in Puerto Rico, where they reside. At all times relevant to this claim Dr. Hernandez was employed at and/or was a staff physician of San Lucas and/or an employee, agent or owner of Ginecologos del Sur, C.S.P.

8. Defendant Ginecologos del Sur, C.S.P., is a professional services corporation organized and existing under the laws of the Commonwealth of Puerto Rico which has its principal place of business in Ponce, Puerto Rico, where it provides gynecological and obstetrical services. At all times relevant to this claim Dr. Vega and Dr. Hernandez were employees, agents and/or owners of Ginecologos del Sur, C.S.P., and the latter is vicariously liable for any negligent acts or omissions of Dr. Vega and Dr. Hernandez.

9. All of the other defendants are citizens and residents of the Commonwealth ,of Puerto Rico or states and territories other than the state of New York. John Does 1, 2 and 3 and Corporations A, B and C are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

10. Unknown Insurance Companies A through H, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

**Factual Allegations**

11. Mrs. Perez Lugo arrived before 10:00 am on March 16, 2000 at Hospital San Lucas and was admitted to the service of Dr. Miguel Vega Gilormini at 14:00.

12. This 22 year old housewife, married to the father of baby MRP, was at 33 weeks gestation and complained of feeling "humid" (watery discharge).

13. With an initial pregnancy exam on October 4, 1999, this primigravida patient reported a last menstrual period of July 26, 1999, yielding an expected due date of May

3

3, 2000, consistent with pelvic examinations and with the size-dates concordance during the prenatal period.

14. She had a positive HCG pregnancy test on September 27, 1999 and had a prenatal course characterized by a threatened abortion and evidence of candida, and a history of urinary tract infection and migraine. She remained normotensive throughout the prenatal period and her laboratory results showed no direct threat to fetal well being.

15. Additionally, this non-allergic homemaker did not abuse alcohol or tobacco or street drugs. Her entire prenatal course, as revealed in the antepartum record from Ginecologos Del Sur, had no relevant connection to her delivery admission in March 2000.

16. Initial examination upon admission to Hospital San Lucas on March 16, 2000 at 1:00 pm revealed the cervix to be 70 percent effaced and 3-4 cm dilated, with a vertex presentation at negative 2 station and intact fetal membranes (fern and nitrazine testing were negative).The diagnosis was 33 week pregnancy (concordant 32 cm fundal height) in premature labor. The admission note written at 1:00 pm stated that the patient had had contractions for three hours, a different complaint than that offered by the patient, and Dr. Vega admitted the patient to the delivery suite for expectant management.

17. Nursing documents reveal that there was a belief that Linda Perez Lugo was admitted for "rotura de membranas" (rupture of membranes"). Additionally, the nurses quantified the strength of contractions in millimeters of mercury, which is impossible because the patient had intact membranes and did not have an IUPC (intrauterine pressure catheter). These notations are indicative of a poorly trained inattentive nursing staff with knowledge gaps inappropriate for nursing personnel caring for a routine patient,

to say nothing of caring for a high risk patient such as Linda Perez Lugo.

18. Dr. Vega performed another pelvic exam on March 16, 2000 at 7:45 pm which revealed no significant changes (70/3-4/ negative 2/vertex/membranes intact), meaning that in the absence of tocolysis there was no advancement. Had Dr. Vega and the hospital, acting in its institutional capacity through its agents the obstetrical nursing health care providers, followed the standard of care, tocolysis would therefore have been maximally effective in arresting labor and steroids would have been able to achieve maximal benefit.

19. Dr. Vega at this point started the patient on the antibiotic Mefoxin and even, at 8:30 pm, started the patient on a liquid diet, indicating optimism that delivery was not imminent but still he, and the obstetrical nurses, did not assure the initiation of tocolysis (the patient was still contracting, per nurses notes) or glucocorticoid administration. The fact that the nurses document contractions to be light/slight and irregular from 11:50 pm on March 16, 2000 (once again, in the absence of the tocolysis required by the standard of care) is consistent with the posture of maximal beneficial effect of tocolytic agent and steroid.

20. On March 17, 2000 at 8:40 am Dr. Vega performed a pelvic exam which revealed effacement of 90 percent with dilatation of 4-5 cm and the vertex still at negative 2 station with membranes still intact. The medication kardex ("registro de medicamentos administrados al paciente") revealed that Celestone 12 mg every 12 hours times 4 doses was initially ordered at 8:50 am that day- this was negligent delay on the part of Dr. Vega and the nurses in that it should have been started the afternoon before and deprived the patient of the benefits of appropriate administration of steroids when initially required.

21. At 5:00 pm on March 17, 2000 Dr. Hernandez found the exam to reveal 100 percent cervical effacement with 7-8 cm of dilatation with the vertex at 0 station. Dr. Hernandez then artificially ruptured the membranes at 5:10 pm, started Pitocin 5 minutes later, and at 5:56 pm delivered a 4 pounds 12 ounces baby girl with cord wrapped around the right foot. Local anesthesia and a medial episiotomy were utilized to deliver the baby girl from LOA position, with Apgar scores reported as 8-8 or 8-9. Apparently the baby was intubated and taken to the NICU after the placenta was expelled, described as spontaneous and complete.

22. Initially under the care of neonatologist Dr. Jose Ortiz Gonzalez, the child was described as a 33 week AGA baby girl with HMD, respiratory failure, RDS and hyperbilirubinemia. Baby MRP required endotracheal intubation, UA/UV catheterization, mechanical assisted ventilation, direct laryngoscopy and tracheal suction. The baby was given Survanta and empirically started on ampicillin and Gentamicin (blood and urine cultures results were no growth). Blood gas analysis at 19:36 revealed a pH of 7.49 with pCO2 of 17.8, pO2 of 254 and BE of negative 5.8.

23. MRP was diagnosed by a physician in Ponce in 2005 as having Cerebral Palsy and presently is verbal but has physical limitations and requires a wheelchair.

24. Due to the negligence of the defendants, plaintiff MRP suffered severe injuries and neurological permanent damages that have multiple adverse effects on her physical and mental functioning.

25. As a result of the injuries she sustained, MRP is a permanently injured child who will not have a normal life and will require continuing care for her condition. Moreover, as a result of her permanent disability MRP's potential to generate future income has

been adversely affected.

26.     Careful analysis of the facts and events of this case reveals that Hospital Episcopal San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez and Ginecologos del Sur, C.S.P., were practicing below the standard of care in the treatment provided to Mrs. Linda Perez Lugo and her daughter MRP. Defendants' departures from the medical standards of care and/or professional negligence include, but are not limited to: failure by Dr. Vega on March 16, 2000 admission to use tocolysis and failure to start glucocorticoids to accelerate fetal pulmonary maturation, thus depriving this little girl of the opportunity to maximize time spent in the uterus and the opportunity to accelerate pulmonary maturation so that the little girl would be better oxygenated upon delivery and subsequently in the nursery; the nurses acting as agents of the hospital, providing obstetrical nursing services to the patient on March 16, 2000 and during the time period from 12:00 midnight to around 8:40 am on March 17, 2000, also deviated from the standard of care by failing to realize the requirement for steroids and tocolysis and engaging Dr. Vega in a respectful private setting trying to have him reassess his plan to withhold steroids and tocolysis. If they were unable to so convince him, their duty to the patient, under the standard of care, required them to activate the chain of command. The effect of following the standard of care would have been further time for the baby in the uterus in a non-hostile intrauterine environment (there was no evidence of abnormal placentation or of a clinical chorioamnionitis and newborn's blood and urine cultures were devoid of growth) and a newborn with more functional pulmonary capability. In summary, the deviations from the standard of care on the parts of Dr. Vega Gilormini and Dr. Hernandez Rodriguez (to the extent that Dr. Hernandez Rodriguez was involved in the

management and was aware of this patient up until the morning of March 17, 2000) and the obstetrical health care personnel of the Hospital Episcopal San Lucas increased the risk for and substantially predisposed to the significant neurological deficits in the child. These deviations prevented the child from attenuating, ameliorating or eliminating the extent of the cerebral palsy.

27. The permanent brain damage of MRP and her consequential physical and emotional damages were caused by the negligent management of Mrs. Perez Lugo's prenatal care and the delivery process. Defendants' departures from the medical standards of care and failure to act in a prudent, reasonable or responsible manner in the medical care provided to Mrs. Perez Lugo and her daughter, is in fact what caused the traumatic outcome outlined above.

28. MRP's damages are reasonably estimated at a sum in excess of $10 million, including her pain and suffering, future expenses for her medical care and treatment and the loss of potential to generate future income.

## COUNT I

**(Medical Malpractice, Vicarious Liability – 31 L.P.R.A. §5141; 5142)**

29. Paragraphs 1 through 28 of this Complaint are incorporated by reference as if fully set forth herein.

30. San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez, Ginecologos del Sur, C.S.P. and the John Doe Defendants had a duty to provide medical care to Mrs. Perez Lugo and her daughter that complied with the applicable standards of the medical profession. Notwithstanding, San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez, Ginecologos del Sur, C.S.P. and the John Doe Defendants breached that duty as set

forth above.

31. San Lucas and Ginecologos del Sur, C.S.P. are further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein that they respectively employed, contracted with and/or granted privileges to, and by their respective medical and nursing staff that intervened with Mrs. Perez Lugo, for their negligence in the selection, monitoring, supervision and granting of privileges to said nurses and doctors, including Dr. Vega Gilormini, Dr. Hernandez Rodriguez and the John Doe Defendants.

32. There is a clear and direct causal link between San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez, Ginecologos del Sur, C.S.P. and the John Doe Defendants' medical malpractice and the damages sustained by plaintiff, as set forth above.

## COUNT II

### (Direct Action Against Insurers – 26 L.P.R.A. § 2003)

33. Paragraphs 1 through 32 of this Complaint are incorporated by reference as if fully set forth herein.

34. Defendants Insurance Companies A through D have a contractual obligation to compensate those who are damaged by the medical errors and omissions of San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez, Ginecologos del Sur, C.S.P. and the John Doe Defendants.  As set forth in Count I, above, those defendants committed medical malpractice with respect to Mrs. Perez Lugo and her daughter MRP. Moreover, there is a clear and direct causal link between said misconduct and the damage sustained by plaintiff, as set forth above.

35. Under 26 L.P.R.A. § 2003, plaintiff has a right to reclaim directly against the corresponding insurers of San Lucas, Dr. Vega Gilormini, Dr. Hernandez Rodriguez, Ginecologos del Sur, C.S.P. and the John Doe Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter final judgment against defendants:

1. Finding defendants to be in violation of 31 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. §2003, as alleged hereinabove.

2. Finding defendants jointly and severally liable to plaintiff for the damages sustained by her, plus applicable interest and costs.

3. Awarding plaintiff such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in the complaint set forth above.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 31st day of October, 2017.

    **S/DAVID EFRON**
    USDC-PR 125701
    **LAW OFFICES DAVID EFRON, PC**
    *Attorneys for Plaintiff*
    PO Box 29314
    San Juan, PR 00929-0314
    Tel. 787-753-6455
    Fax 787-758-5515
    efron@davidefronlaw.com