IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LINDA PEREZ LUGO, *in representation of her minor daughter* **MRP**,

**Plaintiff,**

v.

**HOSPITAL EPISCOPAL SAN LUCAS, INC. et al.,**

**Defendants.**

CASE NO. 17-2268 (GAG)

## **OPINION AND ORDER**

Plaintiff, minor MRP, represented by her mother, Linda Perez Lugo, filed the above-captioned complaint seeking damages for the injuries endured as a result of the allegedly negligent medical care afforded to her, by the medical staff at Hospital San Lucas, pursuant to Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.  (Docket No. 24). Plaintiff, a resident of the State of New Jersey, invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, Defendants Hospital Espiscopal San Lucas, Doctor Miguel A. Vega Gilormini, Doctor Felix Hernández Rodríguez, Ginecólogos del Sur, C.S.P. and the American Int. Ins. Co. Id.

Presently before the Court are Hospital San Lucas and Dr. Hernandez' Motions in Limine seeking to exclude or, in the alternative, limit the scope of, the testimony of Plaintiff's proffered expert witness, Doctor Jason James.  (Docket Nos. 89 & 92).

Defendants challenge Dr. James' qualifications as expert and move to exclude Dr. James' expert witness testimony for failing to meet the requirements established by FED. R. EVID. R. 702. Specifically, Defendants argue that: 1) Dr. James is not qualified to render an expert opinion in pediatric neurology as it is out of his expertise; 2) Dr. James fails to establish that he departed from the applicable standard of care; 3) Dr. James' expert report is deficient because it does not contain

1

references to medical literature or medical treatises to establish the applicable standard of care; 4) Dr. James is not qualified to express an expert opinion as to the *causal relationship* between the alleged deviation from the standard of case and the alleged damages, since the same is beyond his level of expertise and qualifications; and, 5) Dr. James should not be allowed to testify expert opinion/theories not included in his report.

Plaintiff responded in opposition. Therein, Plaintiff argues that: (1) Dr. James is qualified to testify on causation, and (2) a medical expert need not cite medical literature or references, such as published studies. (Docket No. 93). "Dr. James need not be an expert in Pediatric Neurology, neurological problems and cerebral palsy to provide relevant and reliable expert opinion regarding his belief that Plaintiff's "neurological complications are due to prematurity and to the lack of appropriate intrapartum management and management of her premature labor fact that causation." Id.

### I.  Plaintiff's proposed expert witness: Dr. Jason James

Plaintiff announced as expert witness Dr. Jason James, an obstetrics and gynecology physician. Per the parties' joint pretrial order, Dr. James is proffered as expert on the applicable standard of care, Defendants' breach, and causation.[1]

---

[1] To establish a prima facie case of medical malpractice in Puerto Rico, a plaintiff must demonstrate: (1) the basic norms of knowledge and medical care applicable to general practitioners or specialists; (2) proof that the medical personnel failed to follow these basic norms in the treatment of the patient; and (3) a causal relation between the act or omission of the physician and the injury suffered by the patient. Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994). A plaintiff must first establish the physicians' duty. "Because medical knowledge and training are critical to demonstrating the parameters of a health-care provider's duty, the minimum standard of acceptable care is almost always a matter of informed opinion. Thus, it must ordinarily be established by expert testimony." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993). To establish causation under Puerto Rico law, "[a] plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that 'most probably' caused harm to the plaintiff." Lama, 16 F.3d at 478 (quoting Sierra Perez v. United States, 779 F. Supp. 637, 643 (D.P.R. 1991)). While this causation standard does not require all other causes of damage to be eliminated, "a jury normally cannot find causation based on mere speculation and conjecture; expert testimony is generally essential." see also Rojas–Ithier, 394 F.3d at 43 ("[A] factfinder normally cannot find causation without the assistance of expert testimony to clarify complex medical and scientific issues that are more

**Civil No. 17-2268 (GAG)**

> [Dr. Jason James] will testify as a medical expert in obstetrics, gynecology, and general medicine about his qualifications., his review of the medical records in the case, the applicable medical standards, his professional opinion as to the departures from the medical standards by defendants in the treatment provided to Mrs. Linda Perez Lugo and to minor plaintiff MRP and their causal relationship with MRP's damages, his expert report and deposition, the defendants' expert reports and opinions, and about any applicable medical literature in support of his opinion.

(Docket No. 90 at 50.)  Dr. James' expert witness report is dated June 3, 2018.  Said report contains four sections: 1) Dr. James qualifications, 2) the records reviewed, 3) Facts of the case, and 4) Dr. James' comments –i.e. his expert opinion.  Dr. James' expert opinion states, in relevant part, as follows:

> This case is an unfortunate example of a missed opportunity to prevent what eventually became preventable but severe neurological outcome in a preterm delivery. [MRP] has been diagnosed with cerebral palsy among other neurological conditions, undoubtedly as a result of her prematurity with birth occurring at a gestational age of 33 weeks.
>
> Mrs. Linda Perez Lugo was admitted with advanced cervical dilation (3-4 cm, 70% effacement) at 33 weeks in an otherwise previously normal prenatal course. In a primigravida with no other known risk factors, this cervical examination is certainly abnormal and representative of threatened preterm delivery. At this time, inpatient admission is appropriate, and administration of antibiotics and tocolytics to prolong the latent period as well as initiation of corticosteroids to accelerate pulmonary maturation would be considered mandatory and standard of care. **By admitting this patient for <u>expectant management</u> and not initiating antibiotic, tocolytic, and corticosteroid treatments until delivery was imminent, Dr. Miguel A. Vega Gilormini (and his partner Dr. Hernandez, to the extent that Dr. Hernandez was involved with or responsible for the management of this patient prior to the morning of 3/17/2000) deviated from the standard of care. It ls probable, within a reasonable degree of medical certainty, that this *delay* likely resulted in this patient's early delivery and subsequent neurologic complications of her child.** The short hospital course, with a short latent period characterized by little lo no cervical change, lends further credibility lo the fact that tocolytic

---

prevalent in medical malpractice cases than in standard negligence cases."). <u>Marcano Rivera v. Turabo Med. Ctr. P'ship</u>, 415 F.3d 162, 168 (1st Cir. 2005).

**Civil No. 17-2268 (GAG)**

> therapy would likely have been successful al delaying delivery. Had tocolytics been employed and successful, earlier corticosteroid administration would have provided the benefit of accelerated pulmonary maturation: this subsequently would have provided better oxygenation in the critical neonatal period thus potentially preventing the neurological damage that ensued.
>
> Additionally, **Hospital Episcopal San Lucas, as agents and employers of its nursing and administrative staff, were negligent in not recognizing this omission and deviation from the appropriate standard of care. By not addressing the omission of tocolytics and Corticosteroids in a timely fashion with Dr. Vega Gilormini, and falling to utilize the chain of command to ensure appropriate patient management if unable to convince Dr. Vega Gilorminl, the nursing staff and hospital deviated from the standard of care and bear responsibility for this tragic outcome**. Had the nursing staff recognized this deviation, they could have and should have approached Dr. Vega Gilormini and questioned the appropriateness of his medical plan. If met with resistance or indifference, the nurses have a responsibility and an obligation as patient advocates to utilize their chain of command to ensure inappropriate medical care does not go unchecked. This chain of command may utilize various personnel such as a senior nurse, charge nurse, labor and delivery supervisor, hospital administrator. Chief Nursing Officer, Chief Medical Officer, or Ob/Gyn department chairperson, among others. There is no evidence that this occurred at any point in the hospital admission during which time Hospital Episcopal San Lucas was responsible for Mrs. Perez Lugo and her unborn daughter's wellbeing.

(Docket No. 92-1) (Emphasis on original). Dr. James' expert report does not contain references or citations to medical literature or authority to support his opinion as to the applicable standard of care.

During his deposition, Dr. James reiterated his expert opinion. He also acknowledged the lack of medical literature.

> Q.   But did you use any medical literature to do your expert report?
> A.   I did not.

(Docket No. 92-2 at 66.) During his deposition, he also stated that he would not supplement or amend his report.

4

**Civil No. 17-2268 (GAG)**

> Q. So we can understand that you are not going to amend with these documents that you have reviewed your report of June 3, 2018?
>
> A. Correct.

(Docket No. 92-2 at 42.) Moreover, Dr. James was questioned extensively and asked to comment on the expert report prepared by Defendants' proffered expert witness, Dr. De la Vega, particularly the medical literature cited in Dr. De la Vega's expert report.

Dr. James' deposition testimony was taken by Defendants on February 28, 2019 in Miami, Florida. (Docket Nos. 92-2). Per order of the Court, the parties filed their joint proposed pretrial order on April 1, 2019. (Docket No. 81). On May 13, 2019, a pretrial/settlement conference was held by Magistrate Judge Marcos López. (Docket No. 84). Subsequently the parties filed a joint amended proposed pretrial order. (Docket No. 90).

## II. Legal Analysis

Defendants mainly argue: Plaintiff's proffered expert witness' report is deficient and mainly due to: Dr. James' lack of expertise in neonatal neurology and lack of medical literature references or citations in support of the applicable standard of case. Given that, Plaintiff has no remedy to cure these deficiencies—it is too late in the game to supplement Rule 26(a) disclosures—Plaintiff's proffered report fails to comply with FED. R. EVID. R. 702, thus, exclusion is warranted. (Docket Nos. 89 & 92).

### a. Rule 26: Requirements for expert opinions

Defendants argue, Dr. James should not be allowed to testify expert opinion and/or theories not included in his report. They reason that because Plaintiff failed to supplement Dr. James' expert report, as mandated by of Rule 26 (a)(2) of the Federal Rules of Civil Procedure. "Dr. James has not amended or altered his report to address his lack of experience in this area and as such another bases for his testimony to eliminated or otherwise limited. (Docket No. 92 at 4). Moreover, they

**Civil No. 17-2268 (GAG)**

argue that Dr. James "should not be permitted to testify as to the causal relationship between the alleged deviation from the standard of case and the alleged damages, since the same is beyond his level of expertise and qualifications. If he is however permitted, then it should be strictly limited to his testimony and expert report of June 3, 2018." (Docket No. 92).

In a medical malpractice case, pursuant to Rule 26 of the Federal Rules of Civil Procedure, "the plaintiff must disclose to all other parties in the case the expert's identity and submit a written report by the expert including a statement of all of the opinions that the expert will express at trial and the reasons for them." González-Rivera v. Hosp. HIMA-Caguas, No. 15-1538 (GAG), 2018 WL 4676925, at *3 (D.P.R. Sept. 26, 2018), aff'd sub nom. González-Rivera v. Centro Medico Del Turabo, Inc., 931 F.3d 23 (1st Cir. 2019); see also Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009).

"In most cases — the exceptions are not relevant here — an expert witness must produce a written report, which includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." González-Rivera, 931 F.3d at 27 (citing Fed. R. Civ. P. 26(a)(2)(B)). "District courts have considerable autonomy in managing discovery proceedings. This authority extends both to setting disclosure deadlines and meting out sanctions when parties fail to honor such deadlines." González-Rivera, 931 F.3d at 27 (citing Genereux v. Raytheon Co., 754 F.3d 51, 59 (1st Cir. 2014)); see also Fed. R. Civ. P. 26(a)(2)(D) (stating that expert disclosures must be made "at the times and in the sequence that the court orders").

Although Defendants are correct in calling out Plaintiff for her failure to supplement her Rule 26 disclosures, asserting that as a result Plaintiff should be restricted to the four corners of the original report, there is more to it than it meets the eye. In the parties joint proposed pretrial order, Plaintiff discloses—for the first time—her intention to introduce as evidence at trial "*medical literature produced by Dr. James*." (Docket No. 90 at 46.) This undisclosed and previously

unannounced evidence constitutes a desperate, back-door attempt by Plaintiff to recover her expert's weaknesses that were highlighted during his deposition. "This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate." See Thibeault v. Square D. Co., 960 F.2d 239, 244 (1st Cir.1992) (explaining that expert disclosure rules were promulgated to facilitate a "fair contest with the basic issues and facts disclosed to the fullest practical extent").

Rule 26 better prepares attorneys to cross-examine opposing parties' experts at trial. See Laplace–Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002). Where a district court has established a disclosure date, as in this case, a party must disclose the expert's identity at the ordered time. If a party's expert disclosure is untimely, the party is not allowed to use that witness, relevant expert information, "or supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Esposito, 590 F.3d at 77–78. See Gonzalez-Rivera, 2018 WL 4676925, at *3.

> The purpose of a "detailed and complete" expert report as contemplated by Rule 26(a), Fed.R.Civ.P. 26 advisory Committee's note, is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial. See Klonoski, 156 F.3d at 269; Sylla–Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir.1995). See also Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir.1992) (stating that "[t]his sort of disclosure is consonant with the federal court's desire to make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent"). Failure to include information concerning the retained expert that is specifically required by Rule 26(a)(2)(B)—such as "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding for years", see Rule 26(a)(2)(B)—frustrates the purpose of candid and cost-efficient expert discovery.

Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001).

Defendants object to Plaintiff's addition of medical literature to Dr. James' expert report, "at this stage any references relied upon had to be disclosed and was not as such the duty under FED. R. CIV. P. R. 26(e)(1) to produce a supplemental report was not met as such this requires that the

testimony be excluded." (Docket No. 92 at 6). "Changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under subdivision (e)(1).' Fed. R. Civ. P. 26(a) advisory committee's notes. When the duty to supplement is violated, the Court has discretion to exclude the evidence." Rivera-Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 297 (D.P.R. 2017) (quoting Peña–Crespo v. Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005) (when an expert report fails to satisfy the specifics of the rule or when an expert opinion introduced at trial has not been included in the expert's pre-trial report, the Court may exclude the evidence.)) [2]

This case bears a striking resemblance to González-Rivera. As in González-Rivera, the Court must choose an appropriate sanction. "A district court has wide discretion in choosing sanctions for discovery violations." Samaan, 670 F.3d at 36; see Santiago–Díaz v. Lab. Clinico y De Referencia Del Este, 456 F.3d 272, 275 (1st Cir. 2006). Preclusion, however, "is not a strictly mechanical exercise." Esposito, 590 F.3d at 77–78 (1st Cir. 2009) (quoting Santiago-Díaz, 456 F.3d at 276.) "[I]n its discretion, the district court may choose a less severe sanction. Id.

---

[2] Furthermore, expert-related disclosures are insufficient when they consist of "sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony." Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546 (5th Cir. 1996); see also Romero v. Drummond Co., Inc., 552 F.3d 1303 (11th Cir. 2008) (District Court acted properly in excluding experts whose reports consisted of single paragraphs explaining the expert's opinion and the basis for it. None of the reports stated the expert's opinions with sufficient specificity to allow defendants to prepare for rebuttal or cross-examination). "After all ... Rule 26(a)(2)(B) [calls] for the parties to make explicit and detailed expert disclosures." Santiago–Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006); see also Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001) ("The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a) ... is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial.... Failure to include information concerning the retained expert that is specifically required by Rule 26(a)(2)(B) ... frustrates the purpose of candid and cost-efficient expert discovery." (Internal citations omitted)).

Rivera-Marrero, 255 F. Supp. 3d at 297.

**Civil No. 17-2268 (GAG)**

"Where . . . the sanction for a Rule 26 violation is the exclusion of a proffered expert witness, [ ] "consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects." González-Rivera, 931 F.3d at 27 (quoting Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). "Surprise and prejudice are important integers in this calculus," as is "what the late disclosure portends for the court's docket." Id.

As in González-Rivera, 2018 WL 4676925, at *3, the history of this litigation and the proponent's need for the challenged evidence go hand in hand. To make an adequate assessment of the totality of the circumstances, the Court scrutinizes sequence of events leading up to Plaintiff's belated announcement of "*medical literature produced by Dr. James.*"

As in most cases, "[t]he sanctioned party's need for the evidence," Esposito, 590 F.3d at 78, the second factor, weighs heavily in Plaintiff's favor. Without the expert testimony of Dr. James, Plaintiff is unable to present any expert opinion sufficient to establish either the Defendants' duty of care or a breach of the duty owed. see also Martínez-Serrano v. Quality Health Servs. Of Puerto Rico, Inc., 568 F.3d 278, 285 (1st Cir. 2009). The expert testimony of Dr. James is essential to Plaintiff's case. The preclusion of Dr. James "although technically not a dismissal of [Plaintiff's] case [would] effectively amounted to one." Esposito, 590 F.3d at 78.

The third factor to consider is "the sanctioned party's justification (or lack of one) for its late disclosure." Esposito, 590 F.3d at 78. Plaintiff provides no justification or reason for the belated announcement of key evidence.  Not to mention that Plaintiff provides no explanation as to the expert's shift in gears, having stated in his deposition testimony that he had not used medical literature for his report and that he did not intend to amend the report.  This is not fair play.

The fourth factor is "the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure." Esposito, 590 F.3d at

9

78. The record supports that Defendants would suffer substantial prejudice if Plaintiff were allowed to introduce, as separate evidence, the medical literature produced by Dr. James given that this new evidence has not been disclosed to them.  Not to mention the significant impact this has on Defendants' preparation for trial, as this case is trial-ready and will soon be set for trial. In sum, if allowed, Court would be turning a blind eye to Plaintiff strategic violation of its duty to supplement expert required by Rule 26. See Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001).

As the Court of Appeals for the First Circuit has repeatedly warned, *"discovery must not be allowed to degenerate into a game of cat and mouse.*  In choosing [no not supplement her causation expert's report], the plaintiff elected to gamble her case on the admissibility of that expert's testimony. She must abide the foreseeable consequences of that lost gamble." Gonzalez-Rivera, 931 F.3d at 28 (quoting Thibeault, 960 F.2d at 244) (emphasis added); see also Amoah v. McKinney, 875 F.3d 60, 63 (1st Cir. 2017) (denying belated attempt to add new experts because granting it would prejudice defendants by requiring them "to withdraw their current motion for summary judgment, depose plaintiff's experts, ... and then — if still deemed prudent — file a new motion for summary judgment").

Finally, the Court considers "the late disclosure's impact on the district court's docket." Esposito, 590 F.3d at 78. "Scheduling orders are essential tools for modern-day case management, and litigants flout such orders at their peril." Gonzalez-Rivera, 931 F.3d at 25.  The district court has an interest in the efficient management of its docket." Santiago–Díaz, 456 F.3d at 277. "The Court's ability to manage its docket is compromised when a party, without good cause, neglects to comply with reasonable deadlines." Santiago-Lampon v. Real Legacy Assur. Co., 293 F.R.D. 86, 91 (D.P.R. 2013). Plaintiff's conduct in this litigation has severely injured this Court's ability to manage its busy docket efficiently and effectively—it suffices to highlight that this is now one of the oldest cases on the undersigned's docket.

**Civil No. 17-2268 (GAG)**

In light of the above, the Court holds that Dr. James may testify as Plaintiff's expert at trial but his testimony will be strictly limited to his expert report of June 3, 2018.  Moreover, Plaintiff's proposed exhibit—the medical literature produced by Dr. James (Docket No. 90 at 46) —is STRIKEN and may not be presented at trial.

### III.     Conclusion

Accordingly, the Court **GRANTS in part and DENIES in part**, Defendants' motions in limine at Docket No. 89 & 92.

**SO ORDERED.**

In San Juan, Puerto Rico this 31st day of March, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge